# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02523-SBP

MATTHEW SPRAGUE and
AMANDA SPRAGUE,

    Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

## ORDER ON RESERVED ISSUES IN DEFENDANT'S MOTION IN LIMINE

**Susan Prose, United States Magistrate Judge**

    This matter comes before the court on two remaining issues raised in the motion in limine filed by Defendant State Farm Fire and Casualty Company. ECF No. 49 ("Motion" or "Motion in Limine"). On June 23, 2025, the court issued a ruling on all but two of State Farm's numerous requests for exclusion of evidence, ECF No. 73, which the court will refer to as the "First Order" here. The two issues on which the court reserved ruling in the First Order were (1) State Farm's request to preclude evidence concerning a repair-cost estimate prepared by Forge & Bow and related testimony from Jordan Obermann, that entity's principal, *id.* at 12-13, and (2) evidence concerning Plaintiffs' personal situation that may bear on their request for non-economic damages. *Id.* at 12-15.

    The court heard oral argument on the reserved issues at the Final Pretrial Conference on July 2, 2025. ECF No. 85. Having carefully considered the Motion and associated briefing, the entire docket, and the parties' positions at oral argument, the court now respectfully **ORDERS**

that the aspect of the Motion concerning the Forge & Bow estimate is **DENIED**. The personal-information component of the Motion, consistent with the court's ruling from the bench at the Final Pretrial Conference, is **DENIED without prejudice**.

## DISCUSSION

The court assumes the reader's familiarity with the relevant facts and pertinent chronology, which have been detailed at length in the court's order on State Farm's Motion for Summary Judgment and in the First Order, ECF Nos. 72, 73, and are incorporated by reference in this order.

**I.     Request to Preclude Evidence About the Forge & Bow Estimate**

   **A.     Background**

In its order denying Plaintiffs' Motion to Exclude Cost Estimation Opinions Pursuant to F.R.E. 702 and F.R.C.P. 37 (ECF No. 33, the "Cost Opinion Motion"), the court declined to preemptively exclude, in advance of trial, all reference to the Forge & Bow estimate, which projects the highest number in the extant record—$1,234,301.63—that would be required to restore the Spragues' residence. *See* ECF No. 72 at 52-56; *see also* ECF No. 49-2 (July 14, 2023 Forge & Bow estimate).[1] Recall that the only witness who has been disclosed to testify for Plaintiffs concerning the Forge & Bow estimate is Jordan Obermann, the principal of that entity,

---

[1] The court ruled at the Final Pretrial Conference that Plaintiffs would be prohibited from offering evidence at trial concerning a second estimate from Forge & Bow—reflecting an approximately $500,000 increase over the July 14, 2023 estimate—that was generated on May 16, 2025, and not produced to State Farm until June 13, 2025. ECF No. 83-1. As noted at the Final Pretrial Conference, the court will issue a separate written order setting forth its reasons for excluding evidence concerning that extremely late disclosure, made months after discovery had closed and just five weeks before trial.

2

and that Mr. Obermann has not been designated as an expert witness. *See* ECF No. 33-10 at 2 (disclosing Obermann as a potential fact witness pursuant to Federal Rule of Civil Procedure 26(a)(1)). In its order on the Cost Opinion Motion, the court observed that Mr. Obermann might be in possession of facts that would place certain aspects of his testimony in the category of expert testimony, but that the decision where to draw the line between permissible lay opinion testimony under Federal Rule of Evidence 701 and improper expert opinion testimony under Federal Rule of Evidence 702 should be made at trial. ECF No. 72 at 55-56.

Notably, the Cost Opinion Motion provided no analysis concerning the possible testimony of Mr. Obermann specifically. Indeed, Mr. Obermann's name is mentioned just once in the Motion, and then only to note that he was listed on Plaintiffs' initial disclosures under Rule 26(a)(1) and that "there is no corresponding disclosure of expert testimony, timely or otherwise, under Fed. R. Civ. P. 26(a)(2)(B) or even Fed. R. Civ. P. 26(a)(2)(A)." ECF No. 33 at 15. The Cost Opinion Motion did not attempt to analyze the boundary between lay opinion testimony under Rule 701 and expert opinion testimony under Rule 702 insofar as Mr. Obermann's testimony was concerned. *See generally id.* Mr. Obermann's name likewise is not mentioned in State Farm's reply in support of the Cost Opinion Motion. *See generally* ECF No. 43.[2] While State Farm asserted in the Cost Opinion Motion that "no foundation nor witness is disclosed for

---

[2] Indeed, the arguments in the Cost Opinion Motion were presented in such a way that Plaintiffs understood the focus of that Motion to be exclusively on the Charles Taylor estimate and Darwin Cooprider, Plaintiffs' retained cost-estimation expert, and not on the Forge & Bow estimate or Mr. Obermann. *See* ECF No. 39 at 3 (noting that State Farm's "comments on the estimate from Forge & Bow" are "irrelevant to the Instant Motion," because "Cooprider will testify as to what is contained in his expert report and deposition testimony, not what Forge & Bow's estimate opines").

3

the Forge & Bow estimate," and so "it is impossible to know how Forge & Bow arrived at a total hundreds of thousands of dollars greater than Hall Ryan, either [Charles Taylor] estimate, or the MF Group opinion," *id.* at 8-9, that is not exactly accurate. Plaintiffs disclosed Mr. Obermann as a fact witness when it disclosed the Forge & Bow estimate. The critical question was whether State Farm had shown that Mr. Obermann's anticipated testimony was likely to constitute expert opinion testimony under Rule 702. The court found that, based on the briefing presented in the Cost Opinion Motion, a precise determination of whether Mr. Obermann's testimony might transgress the line between Rule 701 and Rule 702 could not be made before trial. ECF No. 72 at 56.

In the Motion in Limine now before the court, State Farm also seeks exclusion of the Forge & Bow "estimates and amounts" as "improper lay opinion." ECF No. 49 at 13-14 ("Other than the [Charles Taylor] estimate if discussed by Mr. Cooprider, any other introduction of amounts would be improper lay opinion.") (citing *Tafoya v. Allstate Vehicle & Prop. Ins. Co.*, 709 F. Supp. 3d 1353, 1326 (D. Colo. 2023)); *see also id.* at 6-7 ("Although a non-expert owner of property may in some limited circumstances testify to the overall market price of real property, the feasibility and cost of repairing property are issues that require technical or other specialized knowledge beyond that of [an] ordinary lay person.") (citing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214-15 (10th Cir. 2011)). The briefing on the Motion in Limine thus squarely presents the question whether Mr. Obermann—who has not been disclosed as an expert witness in accordance with the requirements of Rule 26(a)(2)—can testify about estimated repair costs. *See* ECF No. 62 at 10 (asserting that "a lay witness cannot testify about estimated repair costs") (quoting *Hart v. State Farm Lloyds*, 713 F. Supp. 3d 282, 287 (N.D. Tex.

4

2024), *appeal dismissed*, No. 24-10169, 2024 WL 3916104 (5th Cir. July 18, 2024)), and that "[l]ay witnesses also lack the mathematical knowledge to address ACV [actual cash value] and RCB [replacement cost value]") (citing *RCHFU, LLC* v. *Marriott Vacations Worldwide Corp.*, No. 16-cv-01301-PAB-GPG, 2020 WL 6063895, at *3 (D. Colo. Oct. 13, 2020)).

After reviewing the Motion in Limine, the court determined that it might be possible to define, in advance of trial, more explicit parameters for Mr. Obermann's testimony. To that end, the court ordered oral argument on that aspect of the Motion. Now, having carefully considered the parties' arguments, the complete briefing on the Motion in Limine, and the applicable law, the court issues the instant ruling.

**B.     Analysis**

State Farm asks the court to prohibit Plaintiffs from "pursuing undisclosed damages at trial," ECF No. 49 at 16—which, as relevant to the court's analysis here, encompasses the Forge & Bow estimate and the fact that Mr. Obermann was not disclosed as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(B).[3] State Farm thus invokes the standard for imposing exclusion-of-evidence sanctions under Federal Rule of Civil Procedure 37(c).

The court begins by disposing of a preliminary issue raised by Plaintiffs, who assert that State Farm's request for an exclusionary sanction under Rule 37(c) "must be stricken because Defendant has not advised Plaintiffs what (evidence wise) has not been disclosed and given

---

[3] The court has addressed all other aspects of State Farm's request to preemptively preclude other evidence about damages, including the Charles Taylor estimate, either in its First Order or in its order on the Cost Opinion Motion. Therefore, only the question of the possible exclusion of the Forge & Bow estimate, and Mr. Obermann's related testimony, remains for the court to resolve.

5

Plaintiffs a chance to cure said alleged violation as required by Rule 11 of the Federal Rules of Civil Procedure." ECF No. 56 at 6. However, State Farm has represented that it conferred with Plaintiffs before filing the Motion in Limine and verified that they oppose the Motion. ECF No. 49 at 4. And with regard to the relevant legal framework, "a motion in limine is an appropriate procedural vehicle to address Rule 26(e) violations and accompanying Rule 37(c)(1) sanctions." *Hayworth v. 1st Fin. Bank USA*, No. 18-cv-03106-RM-KLM, 2020 WL 13453513, at *4 (D. Colo. Aug. 18, 2020) (citing *Guerrero v. Meadows*, 646 F. App'x 597, 599 (10th Cir. 2016)). The court therefore turns to the merits of the Motion.

       **1.**       **Mr. Obermann Is Likely to Express Expert Cost-Estimation Opinions**

State Farm argues that the Forge & Bow estimate, and any testimony that Mr. Obermann might present about that estimate or cost estimation generally, is expert opinion testimony based on technical or specialized knowledge and is therefore inadmissible under Rule 701(c)—and Mr. Obermann has not been disclosed as a cost-estimating expert. *See* ECF No. 49 at 14.

At oral argument, counsel for State Farm posited that the circumstances here are fundamentally the same as those addressed by the Tenth Circuit in *James River*. In that opinion, the Tenth Circuit recognized "that testimony provided by a witness is expert testimony if the testimony is 'based on technical or specialized knowledge,' regardless of whether the witness is designated as an expert or fact witness." *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2012 WL 1378536, at *2 (D. Colo. Apr. 20, 2012) (discussing *James River*, 658 F.3d at 1214). The testimony offered by the witness in *James River* and accepted by the trial court as lay opinion under Rule 701(c)—in which the witness estimated the pre-fire value of a building—was in fact expert testimony because the expert exercised "[t]echnical judgment . . . in

6

choosing among different types of depreciation" and was obliged to account "for the interaction between depreciation and damage" in a manner requiring "professional experience . . . beyond the scope of lay opinion testimony"; the expert's calculations "were based in part on his professional experience in real estate"; the expert relied on the analysis and conclusions in a report created by an outside expert; and the Federal Rules of Evidence considered the type of testimony proffered by the witness to be expert opinion. *James River*, 658 F.3d at 1214-15. Thus, the "testimony should not have been admitted under Rule 701" because it "was based on technical or specialized knowledge, which is excluded from the category of lay opinion under Rule 701(c)." *Id.* at 1216; *see also id.* at 1221-22 (reversing damages verdict in favor of plaintiff and remanding for a new trial to determine damages).

Plaintiffs dispute that Mr. Obermann's testimony will cross the boundary into expert opinion in the same as did the witness's testimony in *James River*. At oral argument, counsel for Plaintiffs emphasized that Mr. Oberman simply prepared a "construction bid"—the July 14, 2023 estimate, ECF No. 49-2—"as a service provider."[4] Mr. Obermann's purpose, Plaintiffs say, was to perform the work on Plaintiffs' home, and the estimate merely relays how that work was "going to get done." Plaintiffs stress that Mr. Obermann "was there all along the way," examining the property, figuring out how it could be restored, and communicating with State Farm representatives. At bottom, Plaintiffs contend, Mr. Obermann is "purely a fact witness."

While many aspects of Mr. Obermann's trial testimony may fall within the realm of fact

---

[4] No formal transcript of the oral argument has been generated. The court took extensive notes during the argument, and the quotation marks here are based on those notes and may reflect minor inconsistencies with an official transcript.

testimony, the record does not permit a finding that his testimony will be exclusively factual in nature. The purpose of the Forge & Bow estimate is exactly that: to estimate the cost of restoring the Spragues' residence to its pre-loss condition. Such testimony, as the Tenth Circuit found in *James River*, constitutes expert testimony under Rule 702. *See* 658 F.3d at 1214 (holding that "valuation testimony was expert opinion testimony based on technical or specialized knowledge and therefore inadmissible under Rule 701(c)"). The conclusion that such testimony is expert testimony is consistent with that reached by "[m]yriad federal courts," which have "held that opinions as to cost estimates for repairs and other services constitute expert testimony within the scope of Rule 702, Fed. R. Evid., and are therefore subject to the disclosure requirements of Rule 26(a)(2)." *Ivy Marine Consulting, LLC v. Monarch Energy Partners, Inc.*, No. CV 17-0563-WS-N, 2019 WL 1173356, at *2 n.4 (S.D. Ala. Mar. 13, 2019) (collecting cases); *see also Pryszmont v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:22-CV-02792-JMC, 2024 WL 3090384, at *6 (D. Md. June 21, 2024) (recognizing that "[t]he overwhelming majority of federal courts to consider this issue have held that repair cost estimates in breach of insurance contract cases must be supported by expert, rather than lay, opinions") (collecting cases); *High Rock Westminster St. LLC v. Bank of Am., N.A.*, No. CV 13-500 S, 2017 WL 1040355, at *2 (D.R.I. Mar. 16, 2017) ("[E]stimating the cost of future repair work is generally the subject of expert testimony because estimating the cost of a complex repair requires the forecasting of the amount, type and costs of materials and labor, which are not common knowledge or familiar in everyday life and requires specialized knowledge.") (cleaned up) (collecting cases).[5]

---

[5] *Accord, e.g., Pendarvis v. American Bankers Ins. Co. of Florida*, 354 F. App'x 866, 869 (5th Cir. Nov. 30, 2009) (finding that estimate for repair costs for mobile home "require[s]

The record reveals no reason for the court to treat Mr. Obermann's cost-estimation opinions differently. It is apparent on the face of the Forge & Bow estimate that it seeks to project costs for a restoration of substantial complexity, encompassing some forty categories of information (with multiple subcategories under each); discussing the necessary equipment, materials and labor; and generating numbers—far too high, in State Farm's view—which an ordinary layperson, without specialized knowledge in the construction industry, would not be able to calculate. Therefore, insofar as Mr. Obermann intends to provide opinions about cost-estimation at trial—which the Forge & Bow estimate suggests will be a key component of his testimony—Plaintiffs were obliged to satisfy the disclosure requirements set forth in Rule 26(a)(2). Specifically, in light of the particular circumstances here, the court finds that Mr. Obermann's cost-estimation testimony falls under Rule 26(a)(2)(C), which governs disclosures for expert witnesses who are not required to provide a report. The record demonstrates that Mr. Obermann was hired by Plaintiffs before this litigation commenced and for a purpose other than

---

specialized knowledge of construction and repair work," and concluding that "the district court abused its discretion in allowing [the witness's] lay testimony"); *Armstead v. Allstate Property & Cas. Ins. Co.*, No. 1:14-cv-586-WSD, 2016 WL 928722, at *5 (N.D. Ga. Mar. 11, 2016) (witnesses' "opinions on damage, repair and restoration," including repair estimates, "are expert opinions subject to Rule 702"); *Providence Piers, LLC v. SMM New England, Inc.*, C.A. No. 12-532S, 2015 WL 9699936, at *8 (D.R.I. Oct. 1, 2015) (recognizing that "courts overwhelmingly hold that estimating the cost of a complex repair requires the forecasting of the amount, type and costs of materials and labor, which are not common knowledge or familiar in everyday life; accordingly, predicting future repair costs requires specialized knowledge and is expert, not lay, testimony"), *report and recommendation adopted*, 2016 WL 126742 (D.R.I. Jan. 11, 2016); *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-cv-0326-Orl-DAB, 2009 WL 1953649, at *4 (M.D. Fla. July 6, 2009) ("Any opinions as to the cost to repair are within the purview of expert testimony, and Plaintiff's failure to designate and tender the witnesses as experts forecloses their use as such at trial.").

providing testimony in this case. He gained knowledge about the matter in connection with Plaintiffs' request that Forge & Bow perform the actual restoration work on their residence; his personal observations of the property as Forge & Bow estimated the cost of the work it needed to perform; and his boots-on-the-ground interactions with State Farm representatives during the claim-adjustment process.

Under these circumstances, where Mr. Obermann was not "retained or specially employed to provide expert testimony in the case," *see* Rule 26(a)(2)(B), Plaintiffs were required to disclose him under Rule 26(a)(2)(C). The court therefore turns to the question of what, if any, sanctions should be imposed to redress any omission by Plaintiffs.

### 2. Exclusion Is Not Warranted Under the *Woodworker's Supply* Factors

Federal Rule of Civil Procedure 26(a)(2)(D) states that "[a] party must make these [expert] disclosures at the times and in the sequence that the court orders." Rule 37(c)(1) states that the failure to make a timely disclosure precludes a party from using information unless "the failure was substantially justified or is harmless."

When determining if the failure to make a disclosure is substantially justified or harmless under Rule 37(c), the court looks to four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). This determination is "entrusted to the broad discretion of the district court," and the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (quotation and citation omitted).

Taking into account the totality of the circumstances here, the court respectfully finds that an assessment of the *Woodworker's Supply* factors weighs against a blanket exclusion of any opinion testimony from Mr. Obermann about the Forge & Bow estimate and the topic of cost estimation. Put another way, the omission associated with Plaintiffs' disclosure is ultimately harmless for purposes of Rule 37(c).

***First Factor: No Prejudice or Surprise.*** The timeline here precludes State Farm from credibly claiming prejudice or surprise with respect to Plaintiffs' reliance on the Forge & Bow estimate or their intention to have Mr. Obermann explain how that estimate was generated.

State Farm had the Forge & Bow estimate in hand no later than July 21, 2023, before Plaintiffs filed suit. ECF No. 38-3 at 4. On July 27, 2023, Mr. Obermann met with State Farm officials at the Spragues' residence for the purpose of "walk[ing] the loss/reconcil[ing] [the Forge & Bow] estimate."[6] *Id.* at 3-4; *see also id.* at 3 (notation by State Farm adjuster Michael Newth that "Forge and Bow had all sub bids" reflected in the estimate and that the estimate was "discussed in detail" at the meeting). After that meeting, Mr. Newth was working on the reconciliation of the Forge & Bow estimate, apparently up until the time Plaintiffs filed suit on August 24, 2023. *See* ECF No. 34-1 ¶¶ 57-58 (stating "[t]here is plenty of overlap between the scope of the Hall Ryan, [Charles Taylor], and Forge and Bow estimates," but that "[i]nstead of providing any additional information to support the Forge & Bow estimate, the Spragues filed

---

[6] The claim file makes note of a Forge & Bow employee identified as "Cody/Estimator" also being present during the on-site inspection of the Spragues' property on July 27, 2023. ECF No. 38-3 at 3, 4.

suit").[7]

During litigation, Mr. Oberman was disclosed by Plaintiffs on November 30, 2023, albeit as a potential fact witness pursuant to Rule 26(a)(1). ECF No. 33-10 at 2. In that disclosure, Mr. Obermann was described as a "contractor with knowledge of remediation project," and concurrently with the disclosure of Mr. Obermann, Plaintiffs disclosed the "Forge and Bow contract, estimates, invoices, [and] correspondence"—approximately 135 pages of documents. *Id.* at 2, 4. Despite Mr. Oberman not being identified as an expert witness under Rule 26(a)(2)(C), State Farm proceeded to retain its own expert to provide a "Cost Opinion Report." ECF No. 33-13 at 5-33 (June 19, 2024 Cost Opinion Report prepared by Derek Peterson, Senior Construction Consultant for MF Group, Inc.).

The clear import of the Cost Opinion Report is to rebut the Forge & Bow estimate. In the Cost Opinion Report, Mr. Peterson states that he is rendering the "MFG Opinions of Forge and Bow's Design Proposal"—the Forge & Bow estimate dated July 14, 2023—and proceeds to list ten specific opinions articulating purported deficiencies in the Forge & Bow estimate. *Id.* at 6-7 (discussing, *inter alia*, "excessive" estimates for design fees, demolition costs, wiring costs, HVAC costs, and a new boiler and radiant floor heating). Lest there be any doubt as to Mr. Peterson's intention to refute the estimate prepared by Forge & Bow, the Forge & Bow estimate is attached to Mr. Peterson's opinion. *Id.* at 14-21. Mr. Peterson explicitly disputes Mr. Obermann's conclusion that it would take over $1.2 million to repair the residence; Mr. Peterson

---

[7] The record suggests that State Farm abandoned its reconciliation efforts when Plaintiffs initiated this action in Larimer County District Court on August 25, 2023. *See* ECF No. 4 (complaint).

arrives at a "Cost to Repair Estimate Total" of $644,548.07—approximately half of Forge & Bow's. *Compare id.* at 7 & 27 (MF Group) *with id.* at 21 (Forge & Bow).

Based on these facts, the court cannot find that Plaintiffs' error in not identifying Mr. Obermann as an expert under Rule 26(a)(2)(C) caused prejudice of any legal significance to State Farm. Neither does this chronological record reasonably suggest any basis for State Farm to claim surprise about the nature and scope of Mr. Obermann's testimony. State Farm has had possession of the Forge & Bow estimate since July 2023, has discussed the estimate at length with Mr. Obermann himself, and was attempting to reconcile the estimate when Plaintiffs filed suit.

Even more critically, Plaintiffs' failure to explicitly identify Mr. Obermann pursuant to Rule 26(a)(2)(C) did not dissuade State Farm from obtaining its own counter-expert for the express purpose of refuting, in detail, the numbers in the Forge & Bow estimate. State Farm's efforts in that regard were facilitated by the detail provided in the Forge & Bow estimate— information which this court finds meets, if not exceeds, that which Rule 26(a)(2)(C) requires of a non-retained expert like Mr. Obermann. The Forge & Bow estimate provides a detailed summary of an assessment of some forty subcategories of tasks that must be completed in order to restore Plaintiffs' residence and how much it will cost to repair each component of the damage. ECF No. 49-2. This information thus sufficiently describes "the subject matter on which the witness is expected to present evidence" and provides "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (defining these disclosure requirements for a non-retained witness who does not provide a written report). It delineates the information on which Mr. Obermann bases possible opinion testimony as to the location of the

damage to the property and how much it will cost to repair specific damage. Based on what Plaintiffs disclosed, Mr. Peterson was able to undertake a line-by-line analysis of the Forge & Bow estimate, explaining, with precision, the basis for his opinions that particular tasks were unnecessary or that specific numbers were inflated. ECF No. 33-13 at 22-30. Rule 26(a)(2)(C) does not require more.

The court is not oblivious to the fact that Mr. Obermann's designation was not listed in the "expert" category. But this fact is overridden in these exceptional circumstances, where Mr. Obermann was directly involved in the events preceding the filing of this case and will also testify as a fact witness; where State Farm has been apprised of the source and scope of Mr. Obermann's opinions in the form of the July 14, 2023 Forge & Bow estimate; and where, over a year ago, State Farm secured a rebuttal expert who stands at the ready to counter any opinion testimony from Mr. Obermann. Accordingly, the first *Woodworker's Supply* factor weighs against exclusion of Mr. Obermann's testimony about the Forge & Bow estimate.

***Second Factor: Ability to Cure.*** For the same reasons, State Farm had an opportunity to cure any prejudice attendant on Plaintiffs' failure to strictly comply with the disclosure requirements under Rule 26(a)(2)(C). Indeed, State Farm has availed itself of the most effective of these remedial mechanisms: it has retained its own expert to rebut Plaintiffs' claim to entitlement to restoration costs.

State Farm also had the opportunity to depose Mr. Obermann, although counsel represented at the Final Pretrial Conference that he had not been deposed. This, of course, is a litigation call State Farm was allowed to make, and it is not for this court to second-guess that decision. However, no inference of prejudice, or the inability to cure it, arises from State Farm's

choice not to depose a witness—regardless of his technical designation under Rule 26—who was involved in the matter, pre-litigation, and whose company prepared the estimate on which Plaintiffs consistently have based their demand for replacement cost benefits.

The second *Woodworker's Supply* factor therefore weighs against the sanction of exclusion and in favor of permitting Mr. Obermann's testimony about the July 14, 2023 Forge & Bow estimate.

**Third Factor: No Trial Disruption.** Third, regarding the potential for trial disruption, the court has the ability to ensure that Mr. Obermann's testimony about the Forge & Bow estimate will not disrupt the trial.

The cost-estimation information Mr. Obermann can provide has long been known by State Farm—State Farm was using that information for reconciliation purposes two years ago—and, most important, State Farm has prepared an expert to countermand Mr. Obermann's cost-estimation opinions. Thus, Mr. Obermann, as a non-retained expert, will be permitted to give opinion testimony to the extent of the opinions he has expressed in the July 14, 2023 Forge & Bow estimate. At trial, this court will carefully consider objections, made in real time and in a specific context, and will gauge whether Mr. Obermann's testimony strays from the confines of the information contained in the estimate or based on his personal observations. The court will not permit testimony outside these parameters, and that includes any testimony that may purport to rebut or refute Mr. Peterson's report or opinions. There has been no disclosure whatsoever of any such opinions, and Mr. Obermann will be precluded from testifying at trial about matters that cannot reasonably be construed as encompassed within the July 14, 2023 estimate. In other words, the court expects Mr. Obermann's opinion testimony to hew to the information set forth

in that estimate. If his testimony strays beyond the estimate, that is a matter for State Farm to address by means of appropriate objections at trial.

With those trial strictures in place, the third *Woodworker's Supply* factor similarly weighs against the sanction of exclusion and in favor of permitting Mr. Obermann's testimony, as a Rule 26(a)(2)(C) non-retained expert, about the Forge & Bow estimate.

***Fourth Factor: No Bad faith or Willfulness.*** Turning to the fourth factor, the court discerns no bad faith or willfulness in Plaintiffs not disclosing Mr. Obermann as a non-retained expert witness under Rule 26(a)(2)(C).

The Tenth Circuit has "defined a willful failure as 'any intentional failure as distinguished from involuntary noncompliance.'" *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987) (quoting *Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965)) (discussing willfulness when a party disobeys a discovery order)). At oral argument, counsel for Plaintiffs represented that Mr. Obermann was not disclosed as an expert under Rule 26(a)(2) based on a good-faith belief that his projected testimony lies solely in the arena of lay opinion under Rule 701. In fact, some of it might. But to the extent Mr. Obermann's testimony hinges on his opinions regarding cost estimation—and it appears that a significant portion of it will—such testimony falls under Rule 702 and was subject to the disclosure requirements under Rule 26(a)(2). *See, e.g.*, *James River*, 658 F.3d at 1214 (holding that "valuation testimony was expert opinion testimony based on technical or specialized knowledge and therefore inadmissible under Rule 701(c)").

Regardless, nothing in the record before the court indicates that Plaintiffs acted with an intentional purpose to evade the disclosure rules or to put State Farm in a "gotcha" position when

16

it comes to Mr. Obermann's testimony about the Forge & Bow estimate. Rather, Plaintiffs placed that estimate front and center, presenting it to State Farm officials before this suit was filed as the proper measure (in their view) of replacement cost damages. State Farm's actions demonstrate that it understood Mr. Obermann might present opinion testimony about the Forge & Bow estimate and that State Farm would need to present countervailing expert testimony. Nothing about Plaintiffs' actions posed a barrier to State Farm adducing their own expert testimony to refute the numbers contained in the Forge & Bow estimate. In this factual context, the court does not find Plaintiffs' conduct to be willful, and so concludes that the fourth factor weighs against exclusion of Mr. Obermann's testimony on the estimated costs set forth in the Forge & Bow estimate.

In sum, following an evaluation of the *Woodworker's Supply* factors, the court respectfully finds that each weighs against exclusion. The court therefore exercises its discretion to find that Plaintiffs' violation of Rule 26(a) was harmless under the totality of the circumstances here, and that a blanket preclusion of Mr. Obermann's testimony concerning the Forge & Bow estimate—including any testimony that may qualify as expert opinion testimony under Rule 702—is unwarranted. Accordingly, this aspect of the Motion in Limine is **DENIED**.

**II.     Request to Preclude Evidence About the Parties' Positions**

In its First Order, the court also reserved ruling on State Farm's request to preclude certain information about the parties' respective positions, which the court found to be nebulous both in terms of topic and scope. ECF No. 73 at 12-15.

The oral argument at the Final Pretrial Conference did not completely clarify the indistinct nature of the request, but counsel for Plaintiffs confirmed one critical point: the

17

Spragues are *not* seeking damages for emotional distress, including damages for "garden variety" emotional distress. However, counsel asserted that Plaintiffs do seek non-economic damages for the "inconvenience" to which State Farm allegedly subjected them, and that post-loss evidence about their circumstances may be relevant to the inconvenience question. *See* Colo. Rev. Stat. § 13-64-302(1)(a)(II)(A) ("'Direct noneconomic loss or injury' means nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, physical impairment or disfigurement, and impairment of the quality of life."). Counsel also presented argument on the question of whether Plaintiffs' alleged failure to supplement their response to an interrogatory—that damages for inconvenience were "TBD," *see* Final Pretrial Order, ECF No. 86 at 40-41—amounts to a waiver of their right to seek such damages.

The court remains unable to determine, in the abstract, whether certain evidence might be relevant to Plaintiffs' demand for non-economic damages pursuant to an inconvenience theory. Similarly, it is unable to decide, absent additional evidence concerning the parties' larger course of conduct during discovery, whether a claim for such damages has been waived. Accordingly, as stated on the record at the Final Pretrial Conference, this prong of the Motion in Limine is **DENIED without prejudice** to State Farm raising contemporaneous, particularized objections for the court to assess in light of the evidentiary presentation at trial.

## CONCLUSION

Consistent with the foregoing, the court respectfully **ORDERS** that the aspect of the Motion in Limine requesting exclusion of the Forge & Bow estimate, and related cost-estimation testimony from Jordan Obermann, is **DENIED**. The request for exclusion of certain personal information about Plaintiffs is **DENIED without prejudice**.

DATED: July 7, 2025                     BY THE COURT:

_____
Susan Prose
United States Magistrate Judge